IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

SECURITIES AND EXCHANGE COMMISSION,

    Plaintiff,

    v.

ROBERT OLINS, et al.,

    Defendants

No. C-07-6423 MMC

**ORDER DENYING MOTION FOR RECONSIDERATION**

Before the Court is defendants Robert Olins ("Olins") and Argyle Capital Management Corporation's ("Argyle") (collectively "defendants") Motion for Reconsideration ("Motion"), filed December 11, 2009. Plaintiff Securities and Exchange Commission ("the SEC") has filed opposition, to which defendants have replied. The matter came on regularly for hearing on February 19, 2010. Richard Marshall of Ropes & Gray, LLP appeared on behalf of defendants. Dean Conway and Angela Sierra appeared on behalf of the SEC. By said motion, defendants seek reconsideration of the Court's Order Granting in Part and Denying in Part Plaintiff's Motion for Partial Summary Judgment [and] Denying Defendants' Motion for Partial Summary Judgment, filed November 2, 2009, ("November 2 Order") to the extent "it found [d]efendants liable under Claim 1 for violation of Section 5 of the Securities Act of 1933, as amended ("the Act")" and "request[ ] that the Court grant Defendants' Motion for Summary Judgment as to Claim 1." (See Mot. at 1:7-10.) Specifically, defendants contend that "under principals of statutory construction,

[d]efendants are not 'underwriters,' and therefore, not liable under Section 5 of the Securities Act of 1933." (See id. at 1:16-23); see also 15 U.S.C. § 77(a) ("Section 5") (requiring filing of registration statement prior to sale of securities).

Having considered the parties written submissions, as well as the arguments of counsel at the hearing, the Court rules as follows.

**DISCUSSION**

As set forth in the Court's November 2 Order, defendants did not qualify for the Rule 144 "safe harbor," as defendants concededly did not file a Form 144. (See Nov. 2 Order at 2:11-15.) By the instant motion, defendants argue they nonetheless are exempt from Section 5's registration requirement because, pursuant to Section 4(1), they are not "underwriters." See 15 U.S.C. § 77d(1) (exempting from Section 5's requirements "transactions by any person other than an issuer, underwriter, or dealer"); see also SEC v. Murphy, 626 F.2d 633, 648 (9th Cir. 1980) (holding Section 4(1) was "designed to exempt routine trading transactions with respect to securities already issued").

At the outset, defendants contend they are not underwriters because they have satisfied four out of the five requirements necessary to meet Rule 144's safe harbor.[1] (See Motion at 2:23-3:5); see also 17 C.F.R. § 230.144. In support thereof, defendants argue that where a seller has met some but not all of Rule 144's safe harbor requirements, "there is a spectrum of conduct that courts consider" and such seller may be found not to be an underwriter if such seller is "*near* Rule 144 on the spectrum, but not directly on it." (See Mot. at 2:6-23) (emphasis in original). Defendants, have cited no case wherein a court has used such a test, and this Court is aware of none. Rather, where, as here, an individual has failed to qualify for the Rule 144 safe harbor, courts look to Section 2(a)(11) of the Act,

---

[1] Rule 144 provides "a safe harbor under which persons are deemed not to be underwriters" under the Act, see SEC v. M&A West, Inc., 538 F.3d 1043, 1046 (9th Cir. 2008), and provides requirements that must be met where the seller is an "affiliate" of the issuer. See 17 C.F.R. § 230.144(b) (providing when defendant is "affiliate" all five conditions set forth in Rule 144 must be met); see also 17 C.F.R. § 230.144(c) (requiring issuer's public information to be current); § 230.144(d) (setting holding period for securities); § 230.144(e) (providing limitation on amount of securities sold); § 230.144(f) (providing for manner of sale); § 230.144(h) (requiring notice of proposed sale).

2

which provides in relevant part as follows: "The term 'underwriter' means any person who has purchased from an issuer with a view to, or offers or sells for an issuer in connection with, the distribution of any security."  See 15 U.S.C. § 77b(a)(11) (emphasis added); see also SEC v. Kern, 425 F.3d 143, 151-52 (2d Cir. 2005) (holding where defendants did not comply with Rule 144, defendants nonetheless could take advantage of the Section 4(1) exemption by proving they were not underwriters as defined under Section 2(a)(11)).  Put another way, a seller will not be deemed an "underwriter" if: "(1) the acquisition of the securities was not made 'with a view to' distribution and (2) the sale of any security was not made 'for an issuer in connection with a distribution.'"  See SEC v. Hedden, 796 F. Supp. 432, 437 (N.D. Cal. 1992) (citing Ackerberg v. Johnson, 892 F. 2d 1328, 1336 (8th Cir. 1989) (emphasis added).

The Court next considers whether defendants are underwriters under either, or both, of Rule 4(1)'s two alternative definitions.

### 1. With a View to Distribution

Ordinarily, when inquiring as to whether the subject securities were acquired with "a view to" distribution, courts look to whether the defendant held the shares for a period of more than two years.  See Hedden, 796 F. Supp. at 437 (describing test as "a two year rule of thumb") (citing U.S. v. Sherwood, 175 F. Supp. 480, 483 (S.D.N.Y. 1959); see also Ackerberg, 892 F. 2d at 1336 (citing same).  Here, it is undisputed that defendants acquired the subject shares in November 2004 and sold them between April and June 2005.  (See Long Decl. 2 Ex. 1 ¶ 49; Ex. 2 ¶ 49; Ex. 3 ¶ 49.)  Relying on Rule 144(d)(3)(ii),[2] defendants argue they should be deemed to have held the subject shares for over six years because they are entitled to "tack" their holding period of the subject shares to the holding period of convertible notes Argyle received in 1998 in exchange for loans to SpatiaLight.  (See Mot. at 6:6-8); see also SEC v. M&A West, Inc., 538 F.3d 1043, 1051 (9th Cir. 2008) (describing

---

[2] Olins cites to no authority for the proposition that "tacking" is applicable outside the context of Rule 144's safe harbor.  As discussed infra, however, even assuming such applicability, defendant's reliance thereon is misplaced.

3

"tacking," for purposes of Rule 144 safe harbor, as addition of prior holding period to subject holding period). Rule 144(d)(3)(ii), provides:

> If the securities sold were acquired from the issuer solely in exchange for other securities of the same issuer, the newly acquired securities shall be deemed to have been acquired at the same time as the securities surrendered for conversion or exchange, even if the securities surrendered were not convertible or exchangeable by their terms.

17 C.F.R. § 230.144(d)(3)(ii).

Here, defendants argue, they are entitled to tacking based on the following transactions:

> Under the Intercreditor and Subordination Agreement (entered into by Argyle in order to induce investors to make a $10 million investment in SpatiaLight) Argyle agreed to relinquish all of its rights under a security agreement pursuant to which all 13 notes were secured, subordinate its rights to the new [investment] money and extend the maturity date of the notes in exchange for the prepayment of future interest in shares of common stock of SpatiaLight.

(See Def.'s Opp'n to Pl.'s MSJ at 11:7-12.)

Defendants contend that "[u]nder these facts, there is no consideration involved in the transaction other than securities of SpatiaLight." (See id.) Contrary to defendants argument, however, the exchange involved consideration "other than securities of SpatiaLight." (See id.)[3] In particular, the subject shares were acquired in exchange for defendants' subordination of their security interests to other creditors. (See Vasquez Decl. Ex. 8 at 2; Long Decl. 2 Ex. 28 at 3, Ex. 30 at 3.) In the absence of such additional consideration, defendants would not have received prepayment of unaccrued interest in the form of the subject shares.

Defendants' reliance on SEC No-Action letters is misplaced, as none concerns a transaction similar to the transaction at issue herein. (See Def.'s Opp'n to Pl.'s MSJ at 11-13 nn. 10-16.) Although the letters address a broad range of factual scenarios, no such letter has considered the subordination of rights, let alone found the acquisition of shares in

---

[3] The Court, in its discretion, has considered, in addition to defendants' Motion and Reply, defendants' letter brief filed February 23, 2010, as well as plaintiff's opposition filed in response thereto.

4

a transaction involving such subordination not to be additional consideration. See, e.g., Sevin Rosen Bayless Borovoy, SEC No-Action Letter, 1992 WL 316359 (October 30, 1992) (allowing tacking where warrants to purchase stock were exercised and "no other consideration was involved"); Bell Sports Holding Corp., SEC No-Action Letter, 1992 WL 113997 (May 19, 1992) (allowing tacking where "common stock [was] issued in a cashless option exercise with no other forms of consideration involved"). Defendants' reliance on SEC Compliance & Disclosure Interpretations 532.13 and 532.24 likewise is unavailing. (See Def.'s Opp'n to Pl.'s MSJ at 14:6-15.) Interpretation 532.13 applies only to shares issued for "accrued but unpaid interest"; here the subject shares constituted prepayment of unaccrued interest. Interpretation 532.24 applies where "[t]he decision to pay the interest on [a] convertible note in the form of shares is solely at the discretion of the company"; here the subject shares were issued as part of a negotiated agreement.

Next, relying on Rule 144(d)(1), defendants argue that the holding period for the subject shares should be deemed to begin in 1998, the year in which defendants loaned SpatiaLight funds and agreed to take on the risk of receiving shares as repayment of those loans. (See Mot. at 5:18-21); see also 37 C.F.R. 230.144(d)(1) (defining holding period as beginning when "the full purchase price or other consideration is paid or given by the person acquiring the securities from the issuer or from an affiliate of the issuer"). For the same reasons as set forth above, such argument is unavailing. Specifically, but for defendants' subordination of their security interests to other creditors, defendants would not have received prepayment of unaccrued interest in the form of the subject shares. In other words, such subordination constituted new consideration for which the shares were issued, and thus, under Rule 144(d)(1), the holding period began no earlier than November 2004, the time at which defendants agreed to subordinate their security interests and accept the subject shares.[4]

---

[4] Given the above findings as to the absence of tacking, defendants, contrary to their argument, have satisfied only three of Rule 144's five safe harbor requirements, and, consequently, even if defendant's "spectrum" theory were recognized, the instant sale is not "close enough to Rule 144 to be in the clear." (See Mot. at 2:16.)

Accordingly, the Court finds defendants, under the first of the two alternative definitions, were underwriters.

### 2. For an Issuer in Connection with a Distribution

As the SEC points out, irrespective of whether a seller of an unregistered security purchased with "a view to" distribution, such seller may be held liable under the Act as an underwriter where the sale is made "for an issuer in connection with[ ] the distribution of [such] security." See 15 U.S.C. § 77b(a)(11); Hedden v. Marinelli, 796 F. Supp. 432, 437 (N.D. Cal. 1992) (holding where it did "not appear that [defendant] acquired the stock with a view to a distribution," such circumstance did "not . . . defeat a finding that he [was] an underwriter"; noting "second prong of the analysis remains"); see also Ackerberg v. Johnson, 892 F.2d 1328, 1337 (8th Cir. 1989) (finding where defendant held shares for four years and did not purchase with view to distribution, "second inquiry" was whether the resale was made "'for an issuer in connection with' a distribution"); SEC v. Lybrand, 200 F. Supp. 2d 384, 393 (S.D.N.Y. 2002) (holding defendants' "mental state" at time shares acquired not dispositive; noting defendants "may still be considered underwriters if they sold shares 'for an issuer in connection with' a public distribution of securities"). For purposes of Section 2(a)(11), a "distribution" is "synonymous with 'public offering' as set forth under Section 4(2)." See Berkeley Investment Group, Ltd. v. Douglas Colkitt, 455 F.3d 195, 215 (3d Cir. 2006).

Defendants' argue they are not underwriters because the sales of the subject shares do not constitute a "distribution," or "public offering." Whether a particular sale constitutes a "public offering" "turn[s] on whether the particular class of persons affected need the protection of the Act." See SEC v. Ralston Purina, Co., 346 U.S. 119, 125 (1953). Defendants argue that because SpatiaLight's 10-Q and 10-K filings were current, the public was adequately protected without the requisite registration of the subject shares. (See Reply at 5-8.) Defendants note that in a number of cases in which a public offering has been found, the defendants therein had, in addition to selling unregistered shares, sold such shares at a time when the issuer had also failed to satisfy its public filing

6

requirements.  (See id. at 7 n. 5.)

"An offering to those who are shown to be able to fend for themselves is a transaction not involving a public offering."  See Ralston Purina, Co., 346 U.S. at 125. Under Section 4(1), however, the distinction between buyers who are "able to fend for themselves" and those who are not is the distinction between sophisticated and unsophisticated individual purchasers, not the availability of arguably alternative sources of information to the public at large.  See id. at 121, 126 (noting "since 1911 the company has had a policy of encouraging stock ownership among its employees"; holding such unregistered sales constituted public offering as "employees are just as much members of the investing 'public' as any of their neighbors in the community"); see also United States v. Wolfson, 269 F. Supp. 621, 626 (S.D.N.Y. 1967) (holding "where sales of large quantities of securities [are] made generally to the public, the benefits of [Section 5] should not be thrust aside"); cf. Ackerberg, 892 F.2d at 1337 (finding no public offering where sole purchaser was "a sophisticated investor").  Here, defendants received a large quantity of shares directly from the issuer and sold those shares without proper registration to the general public.  (See Long Decl. 2 Ex. 1 ¶ 49; Ex. 2 ¶ 49; Ex. 3 ¶ 49; Ex. 6 ("Olins' Depo") at 223:8-224:12).  Under such circumstances, the sale of the subject shares constituted a public offering.

To the extent defendants may argue they are not underwriters because the subject distribution was not "for an issuer," such argument likewise is unavailing.  First, to the extent the length of the holding period bears on such determination, see Ackerberg, 892 F.2d at 1336–37, the Court, as discussed above, has found the subject shares were held for a period of less than a year.  See id. (employing "two-year rule of thumb" for purpose of "for an issuer" analysis).  Second, even if defendants were deemed to have held their shares for a longer period, the subject sales would be "for an issuer," for the reason that Olins, on the undisputed evidence, has been found to be an affiliate of SpatiaLight.  (See Nov. 2 Order at 2:7-10.)  "A control person, such as an officer, director, or controlling shareholder, is an affiliate of an issuer and is treated as an issuer when there is a

distribution of securities." See SEC v. Cavanagh, 155 F.3d 129, 134 (2d Cir. 1998) (holding "an affiliate ordinarily may not rely upon the Section 4(1) exemption – he must either re-register his shares or qualify for a different exemption before undertaking to sell them"). "Section 4(1) was intended to exempt only trading transactions between individual investors with respect to securities already issued and not to exempt distributions by issuers or acts of other individuals who engage in steps necessary to such distribution, even if such individuals themselves do not come within the definition of 'issuer, underwriter, or dealer.'" See SEC v. Culpepper, 270 F.2d 241, 247; see also SEC v. M&A West, Inc., 538 F.3d 1043, 1053 (9th Cir. 2008) (holding "spirit of Section 4(1) exemption, [ ] is to allow certain persons to sell unregistered securities because those persons do not have potential access to non-public information relevant to the securities, either through their own affiliation with the relevant corporation or through the affiliation of the person from whom they obtained the securities"). Because Olins was, at all relevant times, an affiliate of SpatiaLight, he is treated as the issuer under Section 2(a)(11) for purposes of sale of the subject shares.

Accordingly, the Court finds defendants, under the second of the two alternative definitions, were underwriters.

**CONCLUSION**

For the reasons stated above, defendants' Motion for Reconsideration is hereby DENIED.

**IT IS SO ORDERED.**

Dated: March 12, 2010

MAXINE M. CHESNEY
United States District Judge