IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| SECURITIES AND EXCHANGE COMMISSION,<br><br>Plaintiff,<br><br>v.<br><br>ROBERT OLINS, et al.,<br><br>Defendants | No. C-07-6423 MMC<br><br>**ORDER GRANTING IN PART AND DENYING IN PART PLAINTIFF'S MOTION FOR INJUNCTIVE RELIEF AND MONETARY REMEDIES** |

Before the Court is plaintiff Securities and Exchange Commission's ("SEC") "Motion for Injunctive Relief and Monetary Remedies," filed July 21, 2010. Defendants Robert Olins ("Olins") and Argyle Capital Management Corporation ("Argyle") (collectively, "defendants") have filed opposition, to which the SEC has replied.[1] Having read and considered the papers filed in support of and in opposition to the motion, the Court hereby rules as follows.[2]

**BACKGROUND**

On November 2, 2009, the Court granted in part and denied in part the SEC's

---

[1] On January 21, 2011, counsel for defendants submitted a letter requesting an evidentiary hearing on the issue of scienter. In light of the Court's findings, set forth below, the request is hereby DENIED.

[2] On January 19, 2011, the Court took the matter under submission and vacated the hearing scheduled for January 21, 2011.

motion for partial summary judgment on the SEC's claims that defendants violated Sections 5(a) and (c) of the Securities Act of 1933 ("Securities Act"), 15 U.S.C. § 77e(a) and (c); Section 13(d) of the Securities Exchange Act of 1934 ("Exchange Act"), 15 U.S.C. § 78m(d); and Section 16(a) and Rule 16a–3 of the Exchange Act, 15 U.S.C. § 78(p); 17 C.F.R. § 140.16a-3. (See Order Granting in Part and Den. in Part Pl.'s Mot. for Partial Summ. J. ("Order") at 2.)[3] Specifically, the Court found the SEC was entitled to summary judgment on the question of defendants' liability for the unlawful sale of unregistered SpatiaLight securities, a company of which Olins was CEO, and Olins's failure to file Schedule 13D and Form 4 related to his acquisition and sale of those securities, but denied the SEC's request for summary judgment on the SEC's "entitlement to an injunction and prejudgement interest," and found "the issue of disgorgement [to be] appropriate for resolution on a more complete record." (See Order at 2-3.)[4]

On June 10, 2010, the Court entered a consent decree on the SEC's claims arising under Sections 13(d) and 16(a) of the Exchange Act, and Rule 16a-3 thereunder, by which the Court permanently enjoined Olins from violating said sections and rule, ordered Olins to pay a civil penalty in the amount of $180,000 pursuant to Section 20(d) of the Securities Act and Sections 21(d)(3) and 21A(a) of the Exchange Act, and barred Olins from "acting as an officer or director of any issuer that has a class of securities registered pursuant to Section 12 of the Exchange Act . . . or that is required to file reports pursuant to Section 15(d) of the Exchange Act." (See Inj. and Monetary J. as to Def. Robert Olins, June 10, 2010.)

By the instant motion, the SEC moves for injunctive relief against defendants on the sole remaining claim, specifically, a permanent injunction against violating Sections 5(a) and (c), and also moves for monetary relief against defendants, specifically, an order

---

[3] The above-described claims are set forth in the First, Eleventh, and Twelfth Claims for Relief in the SEC's Complaint. (See Compl. at 14-21.) Previously, on November 25, 2009, the Court entered a consent decree on the SEC's other claims, by which Olins "consented to entry of [said] Judgement without admitting or denying the allegations of the Complaint." (See J. to Def. Robert Olins, Nov. 25, 2009.)

[4] By amended order filed March 12, 2010, the Court denied defendants' motion to reconsider the Order. (See Am. Order Deny. Mot. for Recons.)

directing defendants to disgorge the proceeds they received from the subject stock sales, along with prejudgement interest, and, as against Olins alone, a "third-tier" civil penalty of $130,000. Defendants oppose the SEC's request for an injunction and disgorgement, and argue the SEC's proposed civil penalty is excessive.

**DISCUSSION**

**I.  Injunctive Relief**

Under Section 20(b) of the Securities Act, "upon a proper showing," the Court may enjoin "any acts or practices which constitute or will constitute a violation of the provisions of [the Securities Act], or of any rule or regulation prescribed under authority thereof." See 15 U.S.C. § 77t(b). "In order to obtain a permanent injunction . . . , the SEC ha[s] the burden of showing there [is] a reasonable likelihood of future violations of the securities laws." S.E.C. v. Murphy, 626 F.2d 633, 655 (9th Cir. 1980). "The existence of past violations may give rise to an inference that there will be future violations," and "the fact that the defendant is currently complying with the securities laws does not preclude an injunction." Id. "In predicting the likelihood of future violations, a court must assess the totality of the circumstances surrounding the defendant and his violations." Id. In so doing, the court considers such factors as "the degree of scienter involved; the isolated or recurrent nature of the infraction; the defendant's recognition of the wrongful nature of his conduct; the likelihood, because of the defendant's professional occupation, that future violations might occur; and the sincerity of his assurances against future violations." Id.

Here, the broad-based nature of Olins's violations, which include not only the unlawful trading of unregistered securities but also the failure to report those trades as required, along with Olins's admittedly knowing false statement (see Decl. of Amie K. Long in Supp. of Pl.'s Mot. for Partial Summ. J. ("Long Decl. 1"), Ex. 6 at 128:24-129:7), made for the purpose of opening a trading account that ultimately was used to execute the subject

trades,[5] evidences, at a minimum, a lack of sufficient attention by Olins to the securities laws,[6] coupled with a willingness to further his goals at the expense of total candor. Moreover, Olins has an extensive history of securities trading and continues, as president of Argyle, to place himself in a position whereby he will be faced with decisions implicating the securities laws, including Section 5.[7]

Accordingly, the Court finds the SEC has demonstrated a reasonable likelihood of future violations, and, consequently, that a permanent injunction against violation of Section 5 of the Securities Act is warranted. See SEC v. Fehn, 97 F.3d 1276, 1296 (9th Cir. 1996) (upholding injunction where defendant engaged in single securities act violation, did not intend to violate securities laws, and gave "sincere assurances of an intent to refrain" from future violations, but, inter alia, whose professional occupation "tend[ed] to suggest a risk of future violations"); Murphy, 626 F.2d at 656 (upholding injunction where defendant's violation was unintentional and "even if the court believed he was sincere in his protestations" that he would not violate law in future).

**II.   Disgorgement**

"Disgorgement is designed to deprive a wrongdoer of unjust enrichment, and to deter others from violating securities laws by making violations unprofitable." SEC v. First

---

[5] On his application to open said trading account, Olins falsely stated he was not a director, or policy-making officer of a publicly-owned company (see Long Decl. 1, Exs. 14, 15), whereas he was in fact a director, as well as the CEO and Principal Financial and Accounting Officer of SpatiaLight at that time (see Olins Answer ¶ 13).

[6] The Court, for purposes of the instant request for injunctive relief, does not find Olins acted knowingly in violating the securities laws, and will accept Olins's account of his conversation with counsel. The latest advice he states he received, however, was given four years before the subject trades and did not constitute an express opinion with respect to his need to report his holdings. (See Olins Aff. ¶ 19.)

[7] Olins argues his consent to a "permanent officer/director bar" and his lack of work for a public company following his departure from SpatiaLight suggests he will not be in a position to violate Section 5 in the future. (See Opp. at 14:13-24.) Section 5's prohibition, however, is not limited to officers and directors, see 15 U.S.C. § 77e(a) (prohibiting sale of unregistered securities by "any person"), and neither Section 4(1) nor Rule 144 automatically exempts sales by all but officers and directors, see 15 U.S.C. 77d(1) (exempting from Section 5's requirements "transactions by any person other than an issuer, underwriter, or dealer"); 17 C.F.R. § 230.144 (providing safe harbor from Section 5's requirements only where holding, disclosure, and sale conditions met).

4

Pacific Bancorp, 142 F.3d 1186, 1191 (9th Cir. 1998) (noting "district court had broad equity powers to order the disgorgement of ill-gotten gains obtained through the violation of the securities laws"). "[W]here two or more individuals or entities collaborate or have a close relationship in engaging in the violations of the securities laws, they have been held jointly and severally liable for the disgorgement of illegally obtained funds." Id. "The amount of disgorgement should include all gains flowing from the illegal activities . . . [;] [d]isgorgement need only be a reasonable approximation of profits causally connected to the violation." SEC v. Platforms Wireless Int'l. Corp., 617 F.3d 1072, 1096 (9th Cir. 2010) (internal quotation and citation omitted) (upholding disgorgement for violation of Section 5 of Securities Act). "The SEC bears the ultimate burden of persuasion that its disgorgement figure reasonably approximates the amount of the unjust enrichment." Id. (internal quotation and citation omitted). "Once the SEC establishes a reasonable approximation of [the] defendants' actual profits, however, . . . the burden shifts to the defendants to demonstrate that the disgorgement figure was not a reasonable approximation." Id. (internal quotation and citation omitted).

     Here, the undisputed evidence demonstrates that Olins obtained $2,480,327 in gross proceeds from the subject unlawful sales of unregistered SpatiaLight securities, which securities he initially had received from SpatiaLight through Argyle, and that Olins transferred approximately $2 million of the sales proceeds back to Argyle for deposit. (See Long Decl. 1, Ex. 6 at ¶. 223:8-224:12, Ex. 17; Decl. of Amie K. Long in Supp. of Pl.'s Revised Req. for Disgorgement and Prejudgment Interest ("Long Decl. 6") ¶ 4, Ex. A; Olins Answer ¶¶ 46, 49; Aff. of Robert Olins in Supp. of Roberts Olins and Argyle Capital Management Corp.'s Opp. to SEC's Remedy Mot. ("Olins Aff.") ¶ 24; Argyle Answer ¶¶ 46, 48.) Defendants do not dispute these facts, but instead request the Court exercise its equitable powers to deny the SEC's request for disgorgement due to Olins's good faith belief that the sales were lawful, or, in the alternative, to offset an unspecified amount in recognition of "legitimate work performed" by Olins on behalf of Spatialight and his lost investment in said company. (See Opp. at 19-20.) As the Court noted in its prior Order,

however, "an analysis of disgorgement does not necessarily include such additional considerations" as scienter. (See Order at 3.) Further, the authorities on which Olins relies are distinguishable as they stand for the proposition that a defendant need not disgorge what he legitimately earns,[8] and Olins provides no evidence that the proceeds from the subject sales of securities resulted from anything other than unlawful activity. See First Pacific, 142 F.3d at 1192 n.6 (holding defendants' loss of investment inappropriate as offset against ill-gotten gains).[9]

Next, defendants' request that the Court, in lieu of applying Rule 144 as it stood at the time of the sales, apply Rule 144 as it currently stands, which, defendants argue, would justify an order of disgorgement in the amount of only $46,098.08.[10] Defendants' argument is unavailing, as the Court must consider the law as of the time of the violation, see, e.g., SEC v. Children's Internet, Inc., No. C 06-6003 CW, 2008 WL 2951365, at *4 (N.D. Cal. Jul. 25, 2008) (noting, "[n]or does the fact that such sales would purportedly be permissible if they were conducted today alter the Court's determination of the proper amount of disgorgement"), and, in any event, the Court has found Olins failed to comply with other provisions of Rule 144, specifically, the notice provision, which remains unchanged (see Order at 2 n.3). The Court likewise will deny defendants' request that the Court order them to disgorge only $723,781.44, which, defendants assert, represents the "difference

---

[8] See SEC v. Church Extension of the Church of God, Inc., 429 F. Supp. 2d 1045, 1050 (S.D. Ind. 2005) (offsetting against wages to be disgorged those wages earned for "provid[ing] real and valuable services"); SEC v. Galaxy Foods, Inc., 417 F. Supp. 1225, 1249 (E.D.N.Y. 1976) (offsetting against wages to be disgorged those wages legitimately earned); SEC v. Thomas James Assocs., Inc., 738 F. Supp. 88, 92 (W.D.N.Y. 1990) (offsetting, against excessive markups in securities sales, legitimate expenses customarily incurred by defendant brokerage firm and that would have been incurred irrespective of defendants' scheme).

[9] Although Argyle assigned the shares to Olins for "good and valuable consideration" (see Long Decl. 1, Ex. 13 at SEC 05772), Olins points to no evidence either identifying or quantifying such "consideration," nor does he request the Court consider offsetting from the amount to be disgorged any figure in recognition thereof.

[10] Olins refers to a 2007 amendment that shortened the safe harbor's holding period from one year to six months. See Revisions to Rules 144 and 145, 72 Fed. Reg. 71516-01 (Dec. 17, 2007).

6

between the price when the interest shares were sold and the price of the stock if [Olins] had held them for a full year as required by Rule 144 at the time." As noted, defendants did not comply with all of Rule 144's other provisions, and, further, defendants cite no authority, and the Court is aware of none, to support a reduction in disgorgement based on such speculation.

In addition to the disgorgement of the sale proceeds, the SEC seeks prejudgment interest in the amount of $892,898, calculated using the Internal Revenue Service underpayment rate pursuant to 26 U.S.C. § 6621(a)(2) and 26 C.F.R. § 301.6621. (See Long Decl. 6 ¶ 5, Ex. D.) Defendants oppose an award of prejudgment interest and, in the alternative, request the Court use a lower figure based on the treasury-bill rate. In general, "[t]he decision whether to grant prejudgment interest and the rate used if such interest is granted are matters confided to the district court's broad discretion," taking into consideration "(i) the need to fully compensate the wronged party for actual damages suffered, (ii) considerations of fairness and the relative equities of the award, (iii) the remedial purpose of the statute involved, and/or (iv) such other general principles as are deemed relevant by the court." See SEC v. First Jersey Sec., Inc., 101 F.3d 1450, 1476 (2d Cir. 1996). In an enforcement proceeding such as this, "the remedial purpose of the statute takes on special importance" in the court's exercise of that discretion. Id. (granting prejudgment interest where "defendants plainly had the use of their unlawful profits for the entire [litigation] period"). Here, defendants do not deny they have had access to the entirety of their ill-gotten gains since the time of Olins's sales. Moreover, in an action brought by the SEC, the IRS underpayment rate is a more appropriate rate by which to calculate prejudgment interest than the treasury-bill rate. See id. 1476-77 (finding IRS underpayment rate, which "reflects what it would have cost to borrow the money from the government" more appropriate in calculating prejudgment interest than treasury-bill rate, as "that is the rate at which one lends money to the government").

Accordingly, the Court finds the SEC has sufficiently established its claim against defendants for disgorgement in the amount of $2,480,327, representing the gross profits

gained as a result of the conduct alleged in the Complaint, together with prejudgment interest thereon in the amount of $892,898.[11]

### III. Civil Penalty

Section 20(d) of the Securities Act provides the district courts with authority to "impose, upon a proper showing, a civil penalty to be paid by the person who committed" a violation of the Securities Act, and sets forth a three-tiered structure limiting the maximum amount to be awarded in any given case. See 15 U.S.C. § 77t(d). While the Court may order a "first-tier" penalty "in light of the facts and circumstances" of the case, a higher, "second-tier," penalty is only warranted for a violation "involv[ing] fraud, deceit, manipulation, or deliberate or reckless disregard of a regulatory requirement," and a "third-tier" penalty is only warranted where there is a further showing that "such violation directly or indirectly resulted in substantial losses or created a significant risk of substantial losses to other persons." See id. The specific amount of the civil penalty imposed within each tier is, however, discretionary. See SEC v. Moran, 944 F. Supp. 286, 296-97 (S.D.N.Y. 1996) (noting "discretionary nature of the civil penalty framework").

Here, the SEC requests the Court impose as against Olins a "third-tier" civil penalty in the amount of $130,000. The SEC, however, has not made a sufficient showing to warrant anything greater than a first-tier penalty; specifically, the SEC has not shown that the subject sales "involved fraud, deceit, manipulation, or deliberate or reckless disregard of a regulatory requirement." See 15 U.S.C. § 77t(2)(B), (C). Moreover, Olins, by the above-referenced consent decree, has already consented to and been ordered to pay $180,000 in civil penalties for violations of the securities laws arising from the subject

---

[11] Although the parties' arguments center almost entirely on the conduct of Olins, the fact that Argyle is a company wholly-owned and operated by Olins (Olins Answer ¶ 14; Argyle Answer ¶ 14), as well as Argyle's "close relationship," see First Pacific, 142 F.2d at 1191, with Olins in, and benefit received from, the unlawful sales, warrants holding Argyle jointly and severally liable for the disgorgement, see Platforms Wireless, 617 F.3d at 1098 (upholding joint and several liability as to defendant who did not personally benefit from violation of Section 5).

sales,[12] and, consequently, the purpose for which such penalties are intended, specifically, a degree of deterrence beyond that provided by disgorgement alone, has, in the main, been accomplished. See S. Rep. No. 101-337, at 9 (1990) reprinted in 1990 WL 263550 (Leg. Hist.); H.R. Rep. No. 101-616, at 20 (1990) reprinted in 1990 WL 256464 (Leg. Hist.).

Accordingly, "in light of the facts and circumstances" of the instant case, the Court finds a "first-tier" civil penalty in the amount of $5,000 is warranted as against Olins.

## CONCLUSION

For the reasons set forth above, the SEC's Motion for Injunctive Relief and Monetary Remedies is hereby GRANTED in part and DENIED in part, as follows:

1. To the extent the motion seeks injunctive relief, the motion is GRANTED as follows:

    a. Defendants Olins and Argyle, their respective agents, servants, employees, attorneys, assigns, and all persons in active concert or participation with them who receive actual notice of this Order by personal service or otherwise are permanently restrained and enjoined from violating, directly or indirectly, Sections 5(a) and (c) of the Securities Act, 15 U.S.C. § 77e(a), 77e(c), by, directly or indirectly, in the absence of any applicable exemption and unless a registration statement is filed and is in effect as to a security, making use of any means or instruments of transportation or communication in interstate commerce or of the mails to offer or to sell such security through the use or medium of any prospectus or otherwise.

2. To the extent the motion seeks monetary relief in the form disgorgement, the motion is GRANTED as follows:

    a. Defendants Olins and Argyle are jointly and severally liable for disgorgement in the amount of $2,480,327, representing profits gained as a result of the

---

[12] Although the consent decree recognizes that "nothing [therein] in any way affects, changes, or modifies the [SEC's] ability to seek disgorgement, prejudgment interest, and/or a civil penalty in connection with the First Claim for Relief of the Complaint" (Consent of Def. Robert Olins as to Injunctive and Monetary Relief ¶ 7), such penalty nonetheless constitutes part of the relevant facts and circumstances.

9

conduct alleged in the Complaint, together with prejudgment interest thereon in the amount of $892,898. Defendants shall satisfy this obligation by paying $3,373,205 within thirty (30) days to the Clerk of this Court, together with a cover letter identifying Olins and Argyle as defendants in this action; setting forth the title and civil action number of this action and the name of this Court; and specifying that payment is made pursuant to this Order. Defendants shall simultaneously transmit photocopies of such payment and letter to the Commission's counsel in this action. By making this payment, defendants relinquish all legal and equitable right, title, and interest in such funds, and no part of the funds shall be returned to defendants. The Clerk shall deposit the funds into an interest bearing account with the Court Registry Investment System ("CRIS"). These funds, together with any interest and income earned thereon (collectively, the "Fund"), shall be held by the CRIS until further order of the Court. In accordance with the guidelines set by the Director of the Administrative Office of the United States Courts, the Clerk is directed, without further order of this Court, to deduct from the income earned on the money in the Fund a fee equal to ten percent of the income earned on the Fund. Such fee shall not exceed that authorized by the Judicial Conference of the United States. The SEC may propose a plan to distribute the Fund subject to the Court's approval. Defendants shall pay post-judgment interest on any delinquent amounts pursuant to 28 U.S.C. § 1961.

     3. To the extent the SEC's motion seeks a third-tier civil penalty of $130,000, the motion is DENIED. To the extent the SEC's motion seeks a lesser penalty, the motion is GRANTED as follows:

          a. Defendant Olins shall pay a civil penalty in the amount of $5,000 pursuant to Section 20(d)(2)(C) of the Securities Act, 15 U.S.C. § 77t(d)(2)(C). Olins shall make this payment within thirty (30) days after entry of this Final Judgment by certified check, bank cashier's check, or United States postal money order payable to the Securities and Exchange Commission. The payment shall be delivered or mailed to the Office of Financial Management, Securities and Exchange Commission, Operations Center, 6432 General Green Way, Mail Stop 0-3, Alexandria, Virginia 22312, and shall be accompanied by a

letter identifying Olins as a defendant in this action; setting forth the title and civil action number of this action and the name of this Court; and specifying that payment is made pursuant to this Final Judgment. Olins shall pay post-judgment interest on any delinquent amounts pursuant to 28 U.S.C. § 1961. The Commission shall remit the funds paid pursuant to this paragraph to the United States Treasury.

4. This Court shall retain jurisdiction over this matter for all purposes, including the implementation and enforcement of this Judgment.

**IT IS SO ORDERED.**

Dated: January 21, 2011

_____
MAXINE M. CHESNEY
United States District Judge