JOHN G. SILBERMANN (Trial Counsel) (MA Bar No. 630202)
SilbermannJ@sec.gov
MARSHA C. MASSEY
**SECURITIES AND EXCHANGE COMMISSION**
100 F Street, N.E.
Washington, DC 20549-4010
Telephone:  (202) 551-4907 (Silbermann)
Facsimile:  (202) 572-1372 (Silbermann)
Counsel for Plaintiff

### UNITED STATES DISTRICT COURT

### NORTHERN DISTRICT OF CALIFORNIA

### SAN FRANCISCO DIVISION

| | |
|---|---|
| **SECURITIES AND EXCHANGE COMMISSION,** | **Case No. CV-07-6423-MMC** |
| **Plaintiff,** | |
| **vs.** | **NOTICE OF MOTION, MOTION AND BRIEF IN SUPPORT OF MOTION FOR ORDER TO SHOW CAUSE WHY DEFENDANT ROBERT OLINS SHOULD NOT BE HELD IN CONTEMPT OF COURT** |
| **ROBERT OLINS, SPATIALIGHT, INC. and ARGYLE CAPITAL MANAGEMENT CORP.,** | |
| **Defendants.** | Time: 9:00 a.m. |
| | Date: August 8, 2014 |
| | Judge: Maxine Chesney |

PLEASE TAKE NOTICE that on Friday, August 8, 2014, at 9:00 a.m., Plaintiff Securities and Exchange Commission ("SEC" or the "Commission") will move the Court at Courtroom 7, 19th Floor, 450 Golden Gate Avenue, San Francisco, CA 94102, for an Order to Show Cause Why Defendant Robert Olins Should Not be Held in Contempt of Court for failure to comply with the disgorgement judgment (the "Disgorgement Judgment") entered against him on February 25, 2011. The Disgorgement Judgment required Defendant Olins to pay $3,373,225 within 30 days of February 25, 2011.  As of the date hereunder, Defendant Olins has not made a single payment toward this judgment obligation even though he has had access to hundreds of thousands of dollars during that

period.  Given Mr. Olins's refusal to pay disgorgement, the Court may now hold Mr. Olins in civil

contempt and impose remedial sanctions.  Fed. R. Civ. Proc. 70.

      This Motion will be based upon the Supporting Memorandum of Points and Authorities and

the Declaration of John Silbermann, filed herewith.

DATED:      June 30, 2014

Respectfully Submitted,

_____

John G. Silbermann
Marsha C. Massey
Attorneys for Plaintiff
SECURITIES AND EXCHANGE COMMISSION

MOTION FOR ORDER TO SHOW CAUSE      -2-
*SEC v. Olins, et al*
Case No. CV-07-6423-MMC

# TABLE OF CONTENTS

I. Procedural Background and Relevant Facts.................................................................1

    A. Defendants Olins and Argyle Have Made Only Token Payments Toward the $2.6 Million in Judgments Entered by This Court Three and Four Years Ago...........................................................................1

    B. Following the Entry of the Disgorgement Judgment, Mr. Olins Filed a Statement of Financial Condition With The SEC in Which He Failed to Disclose Art and Antiques Valued at More Than $6.9 Million...............................................................................................2

    C. From January, 2011 Though May, 2011, Mr. Olins Pledged the Art & Antiques to Obtain $310,000 for his Personal Use, Including $120,000 in Legal Fees and $145,000 for Travel and Other Personal Expenditures, While Only $45,000 Was Used to Pay the Penalty Judgment............................................................................4

    D. The SEC Sought and Obtained the Appointment of a Receiver to Liquidate the Art and Antiques After it Learned of these Undisclosed Assets........................................................................4

    E. Since the Entry of the Disgorgement Judgment, Mr. Olins's Longtime Close Personal Friend has Paid Hundreds of Thousands of Dollars of Mr. Olins's Personal Expenses With No Expectation of Repayment.............................................................................6

II. Discussion.................................................................................8

    A. The Court May Use A Contempt Order To Compel Mr. Olins's Disgorgement.............................................................................8

    B. The Commission Proved Mr. Olins's Violation Of The Disgorgement Order...........................................................................9

    C. The Court Should Impose Remedial Sanctions To Force Compliance.............................................................................11

IV. Conclusion...............................................................................11

MOTION FOR ORDER TO SHOW CAUSE    -i-
*SEC v. Olins, et al*
Case No. CV-07-6423-MMC

# TABLE OF AUTHORITIES

**Statutes**

28 U.S.C. § 1961……………………..………………………………………….……..2

28 U.S.C. § 3001, *et seq.*………………………………………………………….…….3

N.Y.C.P.L.R. § 5225(b)………………………………………………………………….5

**Rules**

Fed.R.Civ.P. 70……………………………………………………………………..1, 8

**Cases**

Shillitani v. United States, 384 U.S. 364, 86 S. Ct. 1531, 16 L. Ed. 2d 622 (1966) ……….8, 11

SEC v. Bilzerian, 112 F. Supp. 2d 12 (D.D.C. 2000) ……………….…………….…….…..8

Reebok, International Ltd. v. McLaughlin, 49 F.3d 1387 (9th Cir. 1995) …..…………..……..8

SEC v. Blavin, 760 F.2d 706 (6th Cir. 1985) …………………………………………………8

SEC v. Commonwealth Chemical Securities, Inc., 574 F.2d 90 (2d Cir. 1978) …………..…..8

SEC v. AMX, International, Inc., 7 F.3d 71 (5th Cir. 1993) …………………………..…..8, 9

SEC v. Huffman, 996 F.2d 800 (5th Cir. 1993) …………………………………………8

SEC v. Solow, 2010 U.S. Dist. LEXIS 10561 (S.D. Fla.  January 15, 2010) …………….…..8-9, 11

SEC v. Rind, 991 F.2d 1486 (9th Cir. 1993) ……………………………………..…………9

Chicago Truck Drivers v. Brotherhood Labor Leasing, 207 F.3d 500 (8th Cir. 2000) …….9, 10

Independent Fed'n of Flight Attendants v. Cooper, 134 F.3d 917 (8th Cir. 1998) …….…..…9

McComb v. Jacksonville Paper Co., 336 U.S. 187, 69 S. Ct. 497, 93 L. Ed. 599 (1949) …..…..9

Donovan v. Mazzola, 716 F.2d 1226 (9th Cir. 1983) …………………………………….…..9

United States v. Rylander, 460 U.S. 752, 103 S. Ct. 1548, 75 L. Ed. 2d 521 (1983) ……...9-10

CFTC v. Wellington Precious Metals, Inc., 950 F.2d 1525 (11th Cir. 1992) …………..……..10

United States v. United Mine Workers, 330 U.S. 258 (1947) ……………………….……11

SEC v. Trevor Cook, Case No. 09-cv-03333-MJD-JJK (D. Minn.  January 25, 2010) ……..11

**MOTION AND SUPPORTING MEMORANDUM OF POINTS AND AUTHORITIES**

The SEC hereby Moves this Honorable Court for an Order to Show Cause Why Defendant Robert Olins Should Not be Held in Contempt for failure to comply with the disgorgement judgment (the "Disgorgement Judgment") entered against him on February 25, 2011. The Disgorgement Judgment required Defendant Olins to pay $3,373,225 within 30 days of February 25, 2011. As of the date hereunder, Defendant Olins has not made a single payment toward this judgment obligation even though he has had access to hundreds of thousands of dollars during that period. Given Mr. Olins's refusal to pay disgorgement, the Court may now hold Mr. Olins in civil contempt and impose remedial sanctions. Fed. R. Civ. Proc. 70.

**I.    Procedural Background and Relevant Facts.**

    **A.    Defendants Olins and Argyle Have Made Only Token Payments Toward the $2.6 Million in Judgments Entered by This Court Three and Four Years Ago.**

On June 10, 2010, this Court issued an Injunctive and Monetary Judgment as to Defendant Robert Olins (the "Penalty Judgment"). (Penalty Judgment, Exh. 1.) The Penalty Judgment provided, *inter alia*, that Mr. Olins was liable to pay a civil penalty in the amount of $180,000. (Id.) The Penalty Judgment further provided that Mr. Olins was obligated to pay the civil penalty amount in four installments of $45,000, payable within 30, 180, 270 and 365 days following the entry of the judgment. (Id.) The Court ordered the accrual of post judgment interest on all delinquent payments as well as on all installment payments due after 30 days. (Id.)

On February 25, 2011, the Court entered an Amended Order Granting in Part and Denying in Part Plaintiff's Motion for Injunctive Relief and Monetary Remedies (the "Disgorgement Judgment"). (Disgorgement Judgment, Exh. 2.) In the Disgorgement Judgment, the Court ordered that Defendants Olins and Argyle "are jointly and severally liable [to pay] disgorgement in the amount of $2,480,327, representing profits gained as a result of the conduct alleged in the Complaint,

together with prejudgment interest thereon in the amount of $892,898." (Id.)  The Disgorgement

Judgment further provided that "Defendants shall satisfy this obligation by paying $3,373,225 within

thirty (30) days to the Clerk of [the] Court...."  (Id.)

The Disgorgement Judgment also provided for: (a) Defendant Olins to pay a civil penalty in

the amount of $5,000, payable to the SEC within thirty (30) days of the date of the Disgorgement

Judgment; (b) Defendants to pay post-judgment interest on any delinquent amounts pursuant to 28

U.S.C. § 1961; and, (c) the Court to "retain jurisdiction over this matter for all purposes, including

the implementation and enforcement of this [Disgorgement] Judgment."  (Exh 2., at ¶ 4.)

Argyle made three payments of $45,000 each toward the civil penalty imposed against Mr.

Olins in the Penalty Judgment.  (Payoff Statement, Exh. 3.)  Neither Mr. Olins nor Argyle has made

any other payments toward either the Penalty Judgment or the Disgorgement Judgment.  (Id.)  As of

Jun 25, 2014, the outstanding principal and accrued interest balances due on the Penalty Judgment

and Disgorgement Judgment are $45,573.63, and $3,387,465.44, respectively.  (Id.)[1]

**B.** **Following the Entry of the Disgorgement Judgment, Mr. Olins Filed a Statement of Financial Condition With The SEC in Which He Failed to Disclose Art and Antiques Valued at More Than $6.9 Million.**

On or about May 18, 2011, Mr. Olins submitted a sworn Statement of Financial Condition

("SFC") to the SEC in an effort to compromise his judgment indebtedness.  (SFC, Exh. 4.)   The

SFC disclosed only five assets belonging to Mr. Olins – cash totaling $476 and four loans receivable

from individuals totaling $75,000.  (Id.)  Mr. Olins claimed liabilities totaling $4,229,720, resulting

in a reported net worth of negative $4,154,244.  (Id.)

Mr. Olins did not submit a financial statement for Argyle, although he did list three Argyle

financial accounts in his SFC.  (Exh. 4.)  The only account with a positive balance (of $476) was

described as an account at "American Bank + Trust." (Id.)  On May 23, 2011, the SEC issued and served a subpoena on American Bank & Trust Company ("AB&T"), an Oklahoma banking corporation based in Tulsa, Oklahoma, seeking records related to Mr. Olins and/or Argyle. (Subpoena, Exh 5.)

Documents produced to the SEC by AB&T disclosed the existence of a loan from AB&T to Argyle (the "AB&T Loan") with a highest balance of $5.1 million.  (Loan Modification Memos, Exh. 6, at p. 4.)  At various times from its inception through February, 2012, the AB&T Loan was modified, extended and renewed.  (Id.)  On February 4, 2011, the outstanding balance due on the AB&T Loan was $2,497,415.  (Id., at p. 1.)

The AB&T Loan was secured by, inter alia, Mr. Olins's personal guaranty and the pledge of "Robert A. Olins'[s] antiques, fine art, and fine jewelry" (the "Art and Antiques") . (Id.)  The "gross value of [this] collateral [was] $11,218,643" as of February 4, 2011.  (Id.)  The Art and Antiques were held by galleries, storage facilities and museums (including the Metropolitan Museum of Art) in New York and Europe.  (Collateral Location Schedule, Exh. 7.)  In a Financial Statement submitted to AB&T dated September 8, 2010, Mr. Olins asserted that the value of the Art and Antiques was $10,905,495.  (Sept., 2010 FS, Exh. 8.)  While Mr. Olins had not made any payments toward his judgment indebtedness from December, 2010 through November, 2012, he had, with the consent of AB&T, sold various pieces of the Art and Antiques to make payments on the AB&T Loan.  (Exh. 6., p. 4.)

---

[1] The SEC is not seeking to hold Olins in contempt for non-payment of the civil penalty because civil penalties are considered debts to be enforced exclusively pursuant to the Federal Debt Collection Procedures Act, 28 U.S.C. § 3001 et seq.

**C.**   **From January, 2011 Though May, 2011, Mr. Olins Pledged the Art & Antiques to Obtain $310,000 for his Personal Use, Including $120,000 in Legal Fees and $145,000 for Travel and Other Personal Expenditures, While Only $45,000 Was Used to Pay the Penalty Judgment.**

Based on the value of the Art & Antiques, AB&T approved several advances to Mr. Olins for personal expenses. (AB&T E-Mails, Exh. 9, pp. 2, 3, 8, 9, 11 -17; Argyle Bank Statements, Exh. 10, at pp. 1-8.) These advances against the Art & Antiques included: $185,000 on January 14, 2011 (Exh. 9, at pp.1, 3; Exh 10, at pp. 1-4); $60,000 on March 11, 2011 ($45,000 of which was used to pay the Penalty Judgment) (Exh 9., at pp. 8, 9; Exh. 10, at pp. 5-6); and, $65,000 on May 2, 2011 (Exh. 9., at pp. 14 -17; Exh 10, at pp. 7-8). Of this $310,000 that Mr. Olins obtained from the pledge of his Art & Antiques, $120,000 was used to pay Mr. Olins's legal bills (Exh. 9, at pp., at pp. 3, 8, 10-12, 14-15, 17), $45,000 was used to pay part of the Penalty Judgment (Exh 9, at p. 8; Exh 10, at p. 5), and $145,000 was used by Mr. Olins for other purposes. (Id.)

The $145,000 remaining from the advances against the Art & Antiques was used by Mr. Olins for, among other things:

- More than $3,100 in travel expenses to Miami and Key West from May 24, 2011 through May 31, 2011 (Exh. 10, at p. 7);

- $7,000 to the University of Michigan (Id., at p. 9); and,

- More than $22,000[2] in travel expenses to Spain from July 5, 2011 through August 29, 2011 (Id., at pp. 10-14).

**D.**   The SEC Sought and Obtained the Appointment of a Receiver to Liquidate the Art and Antiques After it Learned of these Undisclosed Assets.

Based in large part on the value of the Art & Antiques, Mr. Olins represented to AB&T that

---

[2] In addition to these funds drawn from the Argyle account, Mr. Olins used another account over which he had signature authority to pay an additional $10,000 in lodging expenses for this trip. (Exh. 19, at 1.) These funds were drawn on the account of Spirit Bear Ltd., a company used by Mr. Olins to fund his personal expenses since April, 2011. *See* Section E, below.

his net worth was $6.91 million as of September 8, 2010. (Exh. 8.) Mr. Olins represented to the SEC that his net worth was **negative $4.15 million as of May 16, 2011.** (Exh. 4) After the entry of the Penalty and Disgorgement Judgments, Mr. Olins represented to AB&T that his net worth was $6.48 million as of October 29, 2011. (Oct., 2011 FS, Exh. 11.) The $10.63 million increase in Mr. Olins's reported net worth in the five months from May, 2011 to October, 2011 is attributable primarily to his failure to advise the SEC of $9.65 million in assets and his inflation of liabilities of approximately $1 million. (Exhs. 4, 11.)

On July 27, 2011, the SEC registered the Disgorgement Judgment with the U.S. District Court for the Southern District of New York. (Miscellaneous Case Docket Entry, Exh. 12.) This foreign judgment was assigned miscellaneous case number 1:11-mc-00261-P1. (Id.)

Pursuant to New York Civil Practice Law and Rules ("CPLR") § 5225(b), on August 9, 2011, SEC counsel issued and served Restraining Notices and Information Requests to various third parties believed to be holding the Art and Antiques. (Restraining Notices, Exh 13.) The Answers to the Information Requests described the Art and Antiques as follows: (a) the Metropolitan Museum of Art held two sculptures, purported to be owned by Mr. Olins, which the museum had valued and insured at $240,000. (Answers to Restraining Notices, Exh. 14.); (b) Mallett, Inc. held seven items on consignment from Mr. Olins and Argyle which were valued at $3.8 million. (Id.); and, (c) James Bourlet, Inc. held thirty-one items, with undeclared value, in storage for Mr. Olins. (Id.)

On February 16, 2012, the SEC filed an Application in the Southern District of New York for an Order to Show Cause ("OSC") why a receiver should not be appointed to liquidate the Art and Antiques and apply the proceeds to satisfy the obligations of Mr. Olins and Argyle. (Receivership Case Docket Entries, Exh. 15.) On February 23, 2012, United States District Judge Denise Cote issued the OSC, requiring Mr. Olins, Argyle and AB&T to appear and show cause why a receiver should not be appointed. (Id.) At the OSC hearing, held on April 24, 2012, Judge Cote ruled that a

1   receiver should be appointed.  (Id.)  Following the consent of the parties, Judge Cote entered an order

2   appointing AB&T as receiver.  (Id.)

3       As of March 31, 2014, the Receiver has obtained net proceeds from asset sales totaling

4   $1,576,919.29 and has disbursed $1,379,197.40 to AB&T in partial satisfaction of the Defendants'

5   obligations to AB&T.  (Receiver's Status Report, Exh. 16, p. 4.)  The Receiver is continuing to

6   liquidate assets valued at between $2.3 million and $3.7 million.  (Id., at p. 5.)  With more than $1.5

7   million still owed to AB&T and more than **$3.43 million** owed to the SEC, it is clear that the Art and

8   Antiques will not generate enough cash to pay the entirety of the Judgments entered by this Court

9   against Mr. Olins and Argyle.  (Exh. 16, p. 5; Exh.3.)

10

11       **E.    Since the Entry of the Disgorgement Judgment, Mr. Olins's Longtime Close**
12          **Personal Friend has Paid Hundreds of Thousands of Dollars of Mr. Olins's**
           **Personal Expenses With No Expectation of Repayment.**
13

14       Among the $4.2 million in liabilities included in Mr. Olins's SFC was a loan payable to J.

15   Palmer in the amount of $240,000.  (Exh. 4, at p.3.)  Jay Palmer ("Mr. Palmer") has been a close

16   personal friend of Mr. Olins since the two met as college freshman roommates in 1975, nearly 39

17   years ago.  (Palmer Dep. Tr., Exh. 17, at 5.)  Mr. Palmer testified that since at least April, 2011 (two

18   months after this Court entered the Disgorgement Judgment and one month before Mr. Olins filed the

19   SFC with the Court) Mr. Palmer has paid or authorized the payment of hundreds of thousands of

20   dollars for Mr. Olins's personal expenses.  (Exh. 17, at 29-32.)

21

22       These payments were made through a business checking account maintained by Spirit Bear

23   Limited ("Spirit Bear"), a Delaware Stock Corporation formed by Mr. Palmer in November of 2009.

24   (Exh. 17, at 18.)  In the 28 months from April, 2011 through August, 2013, Spirit Bear paid more

25   than $258,000 (more than $9,200 per month) to or for the benefit of Mr. Olins.  (Id., at 33-38.)

26       Mr. Palmer testified that even though he is the founder and sole owner of Spirit Bear, the

27   company has made only one payment of a few thousand dollars to Mr. Palmer.  (Exh. 17, at 14, 40.)

28

Conversely, while Mr. Olins "is not involved with [Mr. Palmer] in Spirit Bear," and has no

contractual relationship with Spirit Bear – "none at all" – Mr. Palmer caused Spirit Bear to make the

payments described above (averaging $9,200 per month) without any contractual obligation – written

or oral – to do so.[3]  (Id., at 13, 42-44.)  Many of the payments made by Spirit Bear to or for the

benefit of Mr. Olins were effected through a debit card issued to Mr. Olins on Spirit Bear's bank

account.  (Id., at 52-53.)  Mr. Olins was free to make charges on this card at will.  (Id., at 52-53.)

On behalf of Spirit Bear, Mr. Palmer produced spreadsheets documenting every payment

made by Spirit Bear to or for the benefit of Mr. Olins.  (Exh. 18.)  Attached to these spreadsheets are

IRS tax forms 1099-MISC showing taxable income distributed to Mr. Olins for tax years 2011 and

2012 (2013 had not been concluded at the time of the production).  (Id.)

Charges incurred by Mr. Olins and paid by Spirit Bear include:

- $68,734.50 in cash withdrawals during a 691 day period (averaging $99.47 per day);
- $67,859.43 to repay individuals who had loaned money to Mr. Olins;
- $28,000 paid to Mr. Olins's wholly owned operating company (and co-defendant in the above-captioned action), Argyle Capital Management Corp.
- $19,401.25 for hotel lodging;
- $14,955.60 to Mr. Olins's personal attorneys (including Edwin Prather, who represented Mr. Olins in the above-captioned action and David Schreier, who represents Mr. Olins in the receivership action in New York);
- $13,117.51 in airfare, Amtrak and other travel expenses;
- $12,285.45 for personal expenses such as gas, restaurants, event tickets and retail purchases;
- $7,936.99 for phone bills; and,
- $1,755 for New York State taxes.

(Exh. 19.)

While Mr. Olins received or benefitted from payments totaling more than $9,200 per month

_____

[3] Even though Mr. Olins has never had any contractual relationship with Spirit Bear, he nevertheless initiated the purchase by Spirit Bear of a "key man" life insurance policy.  (Exh. 17, at 61-64.)  The face amount of this insurance policy is $1 million; the insured is Mr. Olins; the beneficiary is Spirit Bear; and the premiums are paid by Spirit Bear.  (Id., at 61-64.)

beginning two months after this Court entered the Disgorgement Judgment, Mr. Olins has not paid a

single dollar toward his Disgorgement Judgment indebtedness and has made – through Argyle – only

token payments toward the Penalty Judgment indebtedness.  (Exh 19, Exh. 3.)

## II.   Discussion.

### A.   The Court May Use A Contempt Order To Compel Mr. Olins's Disgorgement.

This Court has the inherent power to use a civil contempt proceeding to enforce its orders.

Shillitani v. United States, 384 U.S. 364, 370, 86 S. Ct. 1531, 16 L. Ed. 2d 622 (1966); SEC v.

Bilzerian, 112 F. Supp. 2d 12, 16 (D.D.C. 2000).  *See also* Reebok, International Ltd. v. McLaughlin,

49 F.3d 1387, 1390 (9th Cir. 1995) (finding inherent subject matter jurisdiction to conduct a contempt

proceeding).   That power to enforce judicial orders through a contempt proceeding has been

incorporated into Rule 70 of the Federal Rules of Civil Procedure, which provides in pertinent part:

> If a judgment directs a party ... to perform any ... specific act and the party fails to comply within the time specified, . . . the court may also in proper cases adjudge the party in contempt . . . .

Fed. R. Civ. P. 70.

In light of Mr. Olins's violations of the federal securities laws, this Court had the power to

order the disgorgement of his ill-gotten gains.  *See, e.g.*, SEC v. Blavin, 760 F.2d 706, 713 (6th Cir.

1985).  Given its role in deterring illegal conduct, the disgorgement order against Mr. Olins was an

injunction in the public interest, rather than a mere money judgment.[4]  SEC v. AMX, International,

Inc., 7 F.3d 71, 74-75 (5th Cir. 1993); SEC v. Huffman, 996 F.2d 800, 803 (5th Cir. 1993); SEC v.

---

[4]A money judgment for damages is normally intended to compensate an injured party for the losses suffered, and must be enforced through the normal debt collection procedures.  In contrast with a money judgment, the "purpose of disgorgement is to force 'a defendant to give up the amount by which he was unjustly enriched' rather than to compensate the victims of fraud." Blavin, 760 F.2d at 713 (quoting SEC v. Commonwealth Chemical Securities, Inc., 574 F.2d 90, 102 (2d Cir. 1978)).  Unlike a money judgment (which serves a private need), a disgorgement order serves a public need, and may be enforced like other equitable orders through the Court's contempt powers.

1   Solow, 2010 U.S. Dist. LEXIS 10561 at *35 (S.D. Fl.  January 15, 2010).  *See also* SEC v. Rind, 991

2   F.2d 1486, 1493 (9th Cir. 1993) (holding that disgorgement is a form of injunctive relief for statute of

3   limitations purposes).  Because the order for Mr. Olins to disgorge $3.37 million is designed to serve

4   the important public interest of precluding him from benefitting from his illegal conduct, the Court

5   may compel Mr. Olins's compliance with a disgorgement order through a civil contempt proceeding.

6

7   SEC v. AMX, International, Inc., 7 F.3d at 74-75.

8        **B.     The Commission Proved Mr. Olins's Violation Of The Disgorgement Order.**

9        To obtain a contempt order against Mr. Olins, the Commission "bears the initial burden of

10  proving, by clear and convincing evidence, that the alleged contemnor[] violated a court order."

11  Chicago Truck Drivers v. Brotherhood Labor Leasing, 207 F.3d 500, 505 (8th Cir. 2000) (citing

12

13  Independent Fed'n of Flight Attendants v. Cooper, 134 F.3d 917, 920 (8th Cir. 1998)).  So long as the

14  Commission establishes Mr. Olins's violation of the disgorgement order, there is no further need to

15  show that Mr. Olins acted with any type of wrongful intent or lack of good faith.  McComb v.

16  Jacksonville Paper Co., 336 U.S. 187, 191, 69 S. Ct. 497, 93 L. Ed. 599 (1949); Donovan v. Mazzola,

17  716 F.2d 1226, 1240 (9th Cir. 1983).

18

19       In this case, the undisputed facts establish Mr. Olins's violation of the Court's disgorgement

20  order.  According to the Disgorgement Judgment, Mr. Olins had until thirty days following entry of

21  the Disgorgement Judgment on February 25, 2011 to pay the disgorgement and prejudgment interest

22  amount of $3,373,225 to the Commission.  Disgorgement Judgment, at 10.  Mr. Olins's payment was

23  therefore due on March 27, 2011.  As of the date herein, Mr. Olins has not made a single payment

24  toward the Disgorgement Judgment.

25       Once the Commission establishes Mr. Olins's non-compliance with the Court's disgorgement

26  order, the burden shifts to Mr. Olins to prove his inability to comply with the Disgorgement

27

28  Judgment.  Chicago Truck Drivers, *supra*, 207 F.3d at 505 (citing United States v. Rylander, 460

1  U.S. 752, 757, 103 S. Ct. 1548, 75 L. Ed. 2d 521 (1983)).  He must also show that he made "in good

2  faith all reasonable efforts to comply" with the Disgorgement Judgment.  CFTC v. Wellington

3  Precious Metals, Inc., 950 F.2d 1525, 1529 (11th Cir. 1992).  To meet that burden, Mr. Olins must

4  explain "categorically and in detail" why he is unable to make any payments.  Chicago Truck

5  Drivers, supra, 207 F.3d at 506; Federal Trade Commission v. Affordable Media, LLC, 179 F.3d

6  1228, 1241 (9th Cir. 1999).

7

8         As part of demonstrating his inability to make any payment, Mr. Olins must demonstrate that

9  he has not retained – or hidden – any funds from the illegal conduct that he should now use to satisfy

10  his disgorgement obligations.  See CFTC v. Wellington Precious Metals, 950 F.2d at 1530 (ruling

11  that to avoid contempt, defendant must provide a specific explanation of what happened to funds that

12  were taken).  Mr. Olins must therefore provide specific evidence demonstrating what happened to all

13  of the cash transfers during his illegal conduct.  CFTC v. Wellington Precious Metals, 950 F.2d at

14  1530.

15

16         Since March 27, 2011, Mr. Olins has been in contempt of this Court's Disgorgement

17  Judgment.  At all times since the entry of that judgment, Mr. Olins has failed to pay a single dollar

18  toward that judgment.  The evidence submitted herewith clearly shows that Mr. Olins has had access

19  to hundreds of thousands of dollars.  Rather than abide by the Court's Order, Mr. Olins used his

20  money to travel throughout the United States and Europe.  In the 32 months from January, 2011

21  through August, 2013, Mr. Olins obtained and spent more than $568,000 -- $17,750 per month – for

22  attorneys, travel and other personal expenses.

23         During this time, Mr. Olins concealed his access to these funds by drawing them: (a) against a

24  multi-million dollar art and antique collection that he failed to disclose to the SEC; and, (b) from a

25  limited use company established in the name of a long-time close personal friend.  The evidence

26

27

28

MOTION FOR ORDER TO SHOW CAUSE          -10 -
SEC v. Olins, et al
Case No. CV-07-6423-MMC

clearly establishes that Mr. Olins is in contempt of the Court's Disgorgement Judgment and has done so in bad faith with an attempt to conceal his ability to comply.

### C.   The Court Should Impose Remedial Sanctions To Force Compliance.

Because Mr. Olins has violated its order to pay disgorgement, the Court may impose remedial sanctions until Mr. Olins purges himself of the contempt by making his $3.37 million disgorgement payment in full. Shillitani v. United States, *supra*, 384 U.S. at 370-71. Such remedial sanctions may include any type of coercive order that is designed to produce compliance with the Court's equitable orders. *See* United States v. United Mine Workers, 330 U.S. 258, 304 (1947). Indeed, district courts in recent Commission enforcement actions have imposed incarceration to force defendants to comply with orders to pay disgorgement and/or surrender funds. SEC v. Jamie Solow, *supra*, 2010 U.S. Dist. Lexis 10561 at *62 (where defendant refused to pay disgorgement and prejudgment interest, district court ordered "that Mr. Solow shall surrender to the custody of the U.S. Marshal's Office"); SEC v. Trevor Cook, Case No. 09-cv-03333-MJD-JJK, Memorandum Opinion and Order at 27-29 (D. Minn. January 25, 2010) (finding violation of asset freeze order and ordering that "Defendant Trevor Cook shall immediately be taken into custody by the United States Marshal") (attached as Appendix 1). The Court should therefore impose the necessary remedial sanctions to compel Mr. Olins's compliance with the Disgorgement Judgment.

## IV.   CONCLUSION

Following Mr. Olins's failure to make any of the disgorgement payment required by the Disgorgement Judgment, the Court should find Mr. Olins in civil contempt of the Court's order. The Court should also impose remedial sanctions against Mr. Olins until Mr. Olins discharges the civil

1  contempt by paying the Disgorgement Judgment.

2

3  DATED:          June 30, 2014

4                                              Respectfully Submitted,

5

6                                              _____
                                               John G. Silbermann
7                                              Marsha C. Massey
                                               Attorneys for Plaintiff
8                                              SECURITIES AND EXCHANGE COMMISSION

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

MOTION FOR ORDER TO SHOW CAUSE            -12 -
*SEC v. Olins, et al*
Case No. CV-07-6423-MMC